UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

BRASHARD DELANEY,

        Plaintiff,

v.

SARAH SCHROEDER et al.,

        Defendants.
_____/

Case No. 2:25-cv-75

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 8.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

On May 28, 2025, the Court entered an opinion and judgment (ECF Nos. 9 & 10) dismissing Plaintiff's complaint for failure to state a claim. However, the Court subsequently granted, in part, Plaintiff's "motion for amended or additional findings" (ECF No. 12), allowing Plaintiff to substitute numbered paragraph 8 of the motion (*id.*, PageID.65–66) for numbered paragraph 8 of the complaint (ECF No. 1). The Court vacated the prior judgment (ECF No. 10) and indicated that it would re-screen Plaintiff's complaint.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the

named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Schroeder, Leach, Washington, Prusi. Holman, Nebel, Harry, Howie, Melendez, and Mowery. The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity and First Amendment access to the courts claims against Defendant Zanpeeze. Plaintiff's First Amendment retaliation claims and claims for interference with Plaintiff's right to receive mail against Defendant Zanpeeze in his individual capacity remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington, and the following MBP staff: Warden Sarah Schroeder; Inspector Unknown Leach; GOA Mailroom Staff Members K. Prusi and Unknown Holman; Prisoner Counselor Unknown Nebel; and Corrections Officers Unknown Zanpeeze, Unknown Harry, Unknown Howie, Unknown Melendez, and Unknown Mowery. (Compl., ECF No. 1, PageID.2–4.) Defendants are sued in both their individual and official capacities. (*Id.*)

Plaintiff is currently involved in an ongoing civil suit against Defendants Leach and Prusi in *Delaney v. Waltanen et al.,* Case No. 2:24-cv-194 (W.D. Mich.), filed in October 2024. (*Id.*, PageID.9.) Plaintiff has also assisted more than five non-party illiterate prisoners in filing grievances and in "contact[ing] organizations and officials" and has sent "over a dozen step III grievances to Director's Office" complaining of cruel and unusual conditions of confinement. (*Id.*)

Plaintiff alleges that, on January 28, 2024, Plaintiff sent the Clerk of Court a motion for a temporary restraining order on Defendants Prusi, Holman, Howie, and Leach, requesting relief for an on-going issue related to Plaintiff's out-going mail. (*Id.*, PageID.5.)

On February 17, 2025, Plaintiff gave Defendant Nebel mail to send to Plaintiff's fiancée, requesting assistance in legal research and investigation. (*Id.*) Plaintiff's fiancée never received the letter. (*Id.*)

On March 5, 2025, Plaintiff received J-Pay mail letters which were duplicative of letters received on February 19, 2025. (*Id.*, PageID.6.) On March 14, 2025, Plaintiff's fiancée informed

4

Plaintiff that she had sent Plaintiff "over ten J-Pay emails with some lawyers['] addresses, etc." (*Id.*)

On March 18, 2025, Plaintiff sent kites to Defendants Schroeder and Leach and non-party Assistant Deputy Warden James informing them that Defendants Zanpeese and Harry were passing out mail to the wrong prisoners. (*Id.*)

On March 25, 2025, "[d]ays after the Plaintiff forwarded step III grievance to Director[']s Office," Plaintiff gave Defendant Nebel out-going mail addressed to Plaintiff's family for a case concerning Plaintiff's confiscated video visits. (*Id.*, PageID.6–7.) As of the filing of Plaintiff's complaint on April 16, 2025, Plaintiff's family had not received the mail. (*Id.*, PageID.7, 11.)

Also on March 25, 2025, Defendant Zanpeeze gave Plaintiff's J-Pay mail, which included photographs of Plaintiff's toddler, to another prisoner convicted of criminal sexual misconduct. (*Id.*) Defendants Zanpeeze and Harry had observed Plaintiff having verbal altercations with this prisoner in the past. (*Id.*)

> Witness Demetria Solomon attempted to give C/O [Zanpeeze] the Plaintiff's mail back and C/O Zanpeeze stated, "He (Mr. Delaney) keeps filing grievances about not getting his mail. Now he really ain't getting shit from me. Tell him to go write a grievance."

(ECF No. 12, PageID.65–66.) On March 26, 2025, either Defendant Zanpeeze or Defendant Harry again delivered Plaintiff's legal mail receipt to another prisoner. (Compl., ECF No. 1, PageID.7, 11.)

Each piece of mail has recipient's first and last name and lock number on it. (*Id.*) On each occasion that Plaintiff's mail was delivered to the wrong prisoner, Plaintiff's mail was sandwiched between two pieces of the other prisoner's mail. (*Id.*) Other prisoners who have filed grievances and lawsuits against MBP administration and staff have also experienced delivery issues with their incoming and outgoing mail. (*Id.*)

5

Defendant Melendez and an unknown correctional officer are responsible for picking up the mail from Plaintiff's housing unit. (*Id.*, PageID.8.) Plaintiff alleges that other prisoners have observed Defendants Howie and Mowery "tampering with mail in mailbox." (*Id.*) Defendants Leach, Prusi, Holman, and/or a non-party unknown inspector, according to MDOC policy, would have been the last administrators to handle Plaintiff's mail. (*Id.*, PageID.9.)

As a result of the events described in Plaintiff's complaint, Plaintiff claims that he has been prevented from communicating with his family and has fallen into a deep depression. (*Id.*, PageID.10.) He brings claims for violation of his First Amendment rights and seeks monetary relief. (*Id.*, PageID.11.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

6

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims against Defendants Washington and Schroeder

Plaintiff brings claims against Defendants Washington and Schroeder, whom he describes as the MDOC Director and MBP Warden, respectively. Plaintiff alleges that he sent a kite to Defendant Schroeder, explaining that Defendants Zanpeeze and Harry were delivering mail to the wrong prisoners. (ECF No. 1, PageID.6.) He also claims to have sent multiple step III grievances to Defendant Washington's "Office," complaining of the prison's "conditions of confinement" and the issues related to Plaintiff's mail. (*Id.*, PageID.7, 10.) Plaintiff's allegations, taken as true, do not give rise to liability under Section 1983.

Government officials, such as Defendants Washington and Schroeder, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's

7

subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts that would plausibly suggest that Defendants Washington and Schroeder authorized, approved, or knowingly acquiesced in any unconstitutional conduct. Indeed, there is nothing to indicate that either Defendant played an active role in the delivery of prison mail generally or Plaintiff's mail specifically. Therefore, Plaintiff fails to state a claim against Defendants Washington and Schroeder, and his claims against them will be dismissed.

### B. First Amendment Claims Against Remaining Defendants

Plaintiff states that he brings claims for violation of his First Amendment rights. (ECF No. 1, PageID.11.) The Court will liberally construe Plaintiff's complaint as raising claims of First Amendment retaliation and interference with Plaintiff's access to the courts.

#### 1. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

##### a. Protected Conduct

"While a prisoner has a First Amendment right to file grievances against prison officials on his own behalf, 'an inmate does not have an independent right to help other prisoners with their legal claims.'" *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (quoting *Thaddeus–X,* 175 F.3d at 395). Therefore, assisting another prisoner in filing a grievance or lawsuit is not protected activity within the meaning of the First Amendment unless the plaintiff alleges sufficient facts that would plausibly suggest that "his assistance is *necessary* to provide another inmate with constitutionally-protected access to the courts." *Id.* (emphasis in original).

Here, Plaintiff has not alleged any facts from which this Court could infer that Plaintiff's assistance was necessary to protect other prisoners' access to the courts. Though he alleges that

9

the other prisoners were "illiterate," that alone does not plausibly suggest that these prisoners lacked the necessary resources within the prison, such as a formal legal writer program, to file their own grievances and complaints. Moreover, as discussed in greater detail below, any claim for access to the courts requires a "non-frivolous" legal claim, *Lewis v. Casey*, 518 U.S. 343, 349 (1996), in a direct appeal, habeas corpus application, or civil rights claim, *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Plaintiff has not alleged any facts regarding the nature of the other prisoners' claims as required to meet this initial pleading standard. Therefore, any First Amendment retaliation claim premised upon Plaintiff's actions in assisting other prisoners will be dismissed. *See Hermansen v. Kentucky Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014) (affirming the dismissal of the plaintiff's retaliation claim for failure to state a claim where the plaintiff complaint alleged that he was assisting another inmate in filing a grievance at the time of this transfer but the plaintiff failed to adequately allege that the other inmate was "incapable of pursuing his own grievance or had no other source of help.")

Nonetheless, it is well-established that an inmate has a right to file "non-frivolous" complaints and grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Therefore, at least for purposes of this early stage of the proceedings, the Court finds Plaintiff has alleged that he engaged in First Amendment protected conduct when Plaintiff filed complaints and grievances on his own behalf. However, that does not end the Court's inquiry.

b.   **Adverse Action and Causation**

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the

defendant's conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that Defendant Nebel twice took Plaintiff's outgoing mail for mailing to Plaintiff's fiancée and family but that, as of the filing of Plaintiff's complaint, Plaintiff's fiancée and family had not received the mail. (ECF No. 1, PageID.5.) He also alleges that he received duplicative J-Pay letters and did not receive others, (*id.*, PageID.6), that Defendants Zanpeeze and Harry delivered Plaintiff's mail to the wrong prisoners, including delivering photographs of Plaintiff's child to a prisoner convicted of criminal sexual conduct, (*id.*, PageID.6–7; ECF No. 12, PageID.65), and that Defendants Howie and Mowery had been observed "tampering" with unidentified mail in an unidentified manner (Compl., ECF No. 1, PageID.8). Finally, Plaintiff does not make any specific allegations against Defendants Leach, Prusi, Holman, and Melendez claiming only that they are generally responsible for handling Plaintiff's mail. (*Id.*, PageID.9.)

First, taking Plaintiff's allegations against Defendant Zanpeeze as true (*see* ECF No. 12, PageID.65–66), Plaintiff's First Amendment retaliation claims against Defendant Zanpeeze cannot be dismissed on screening. Intentional misdelivery of personal mail to Plaintiff's "enemy" might prove to be a sufficiently adverse consequence to deter protected conduct. Moreover, Defendant Zanpeeze's statements to Prisoner Solomon arguably supports an inference that misdelivery—or at least Defendant's failure to correct misdelivery—was motivated in part by Plaintiff's protected conduct.

11

However, Plaintiff's allegations fail to plausibly suggest that any of the remaining Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery took any intentional adverse action against Plaintiff. At best, the facts alleged against the remaining Defendants describe a highly dysfunctional mail system involving lost, misdelivered, and duplicative mail. Negligence, however, does not give rise to liability under Section 1983. Plaintiff fails to plead facts that would plausibly suggest that any remaining individual Defendant took any intentionally adverse action against Plaintiff personally.

Second, in alleging that the remaining Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery engaged in unlawful retaliation, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive Section 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

It appears that Plaintiff attempts to rely upon temporal proximity to create an inference of retaliation, alleging that "[d]ays after the Plaintiff forwarded step III grievance to Director[']s Office," Plaintiff gave Defendant Nebel out-going legal mail that was never received by Plaintiff's family, and Defendant Harry delivered Plaintiff's mail to the wrong prisoner. (ECF No. 1, PageID.6–7.) In some circumstances, temporal proximity "may be 'significant enough to

constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004).

Here, Plaintiff's complaint contains only conclusory allegations of retaliation against Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery. It is devoid of any facts from which this Court can infer that Defendants Nebel, Zanpeeze, and Harry were even aware of Plaintiff's step III grievances, let alone that they intentionally failed to properly send or deliver Plaintiff's mail in retaliation for those grievances. Plaintiff's allegation of temporal proximity of "days" alone is insufficient to create an inference of indirect evidence of causation.

Therefore, for each of the foregoing reasons, Plaintiff's claims of First Amendment retaliation against Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery will be dismissed for failure to state a claim.

### 2. Access to the Courts

Plaintiff alleges that items of "legal mail" were among those pieces of mail improperly sent or delivered. The Court has construed Plaintiff's allegations to raise claims for interference with Plaintiff's access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d

13

884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint does not include any well-pleaded factual allegations that would allow the Court to infer that the issues with Plaintiff's incoming and outgoing mail hindered a non-frivolous legal claim in a direct appeal, habeas corpus application, or civil rights claim. Therefore,

14

any claims for interference with Plaintiff's access to the courts due to the issues with Plaintiff's mail are properly dismissed.

To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's claim based upon the denial of Plaintiff's grievances, he cannot. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### 3. First Amendment Right to Send and Receive Mail

Plaintiff contends that he has been unable to successfully send and receive mail. "A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d

15

996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

Here, for the same reasons discussed above, the Court will allow Plaintiff to proceed with his claim for interference with Plaintiff's right to receive mail against Defendant Zanpeeze.[2]

However, as discussed above, Plaintiff's allegations fail plausibly to suggest that Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery *intentionally* interfered with Plaintiff's ability to send and receive mail. Plaintiff contends that there were mailings he sent to his fiancée, family, and friends that were never received and that there were messages sent by his fiancée, family, and friends that Plaintiff never received; but Plaintiff does not allege facts that support an inference that these failures were the product of intentional action by any of the remaining named Defendants. Plaintiff must allege more factual content to "nudge his claim . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). There are no facts alleged to support

---

[2] The Court notes that it is entirely possible that Plaintiff received the mail despite the alleged intentional misdelivery. Plaintiff appears to have actual knowledge of the content of the misdelivered mail. If Plaintiff, in fact, received the mail after a minor delay, this First Amendment claim may lack merit.

an inference that any failures to send or receive mail were the product of anything beyond negligence or accident.³

It is well established that negligent conduct will not state a constitutional claim under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. . ."), and *Baker v. McCollan*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official)). Numerous courts have recognized that a prison official's negligent interference with a prisoner's First Amendment rights does not violate the constitution. *See, e.g., Colvin v. Caruso,* 605 F.3d 282, 293–94 (6th Cir. 2010) (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330).

Because Plaintiff's complaint fails to allege facts that would plausibly suggest that Defendants Leach, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery intentionally

---

³ Moreover, it appears that certain failures to send mail may have been the fault of Plaintiff. Plaintiff alleges that he sent mail to his fiancée during the "legal mail" round when it was not within either the MDOC or the legal definition of legal mail. *See* MDOC Prisoner Mail Policy Directive 05.03.118, ¶¶ Q, HH (eff. 5/5/2025); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).

17

interfered with Plaintiff's right to send and receive mail, Plaintiff fails to state a First Amendment claim against these Defendants arising out of any interference with his mail.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Defendants Schroeder, Leach, Washington, Prusi, Holman, Nebel, Harry, Howie, Melendez, and Mowery will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's official capacity and First Amendment access to the courts claims against Defendant Zanpeeze. Plaintiff's First Amendment retaliation claims and claims for interference with Plaintiff's right to receive mail against Defendant Zanpeeze in his individual capacity remain in the case.

An order consistent with this opinion will be entered.

Dated:   July 23, 2025                                 /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      United States Magistrate Judge